UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNA M. SCHEUER,
f/k/a DONNA M. MILLARD,

      Plaintiff,                                Case No. 14-cv-11218
                                                    Hon. Matthew F. Leitman

v.

JEFFERSON CAPITAL
SYSTEMS, LLC,

      Defendant.

_____/

**OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION TO DISMISS (ECF #18); (2) DENYING AS MOOT PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF #14); AND (3) DISMISSING COMPLAINT WITH PREJUDICE**

**INTRODUCTION**

In this action, Plaintiff Donna M. Scheuer ("Scheuer") alleges that Defendant Jefferson Capital Systems, LLC ("Jefferson") violated the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Michigan Collection Practices Act (the "MCPA"), M.C.L. § 445.251 *et seq.*, when it sent her a collection notice containing purportedly false statements. However, the statements in question would not have misled nor deceived the "least sophisticated debtor," nor would the statements have been material to such a

1

debtor.  Accordingly, the statements are not actionable under the FDCPA or the MCPA.

## FACTUAL BACKGROUND

Scheuer bases her claims on a letter she received from Jefferson dated March 7, 2014.  (*See* the "Letter," attached to the Amended Complaint as Ex. 1, ECF #13-1.)  The Letter stated that a debt of $235.98 owed by Scheuer "is with [Jefferson's] office for collection and servicing."  (Letter at 2, Pg. ID 174.)  The Letter further identified Jefferson as Scheuer's "[c]urrent [c]reditor," and it described the debt in question as "FINGERHUT DIRECT MARKETING." (*Id.*)

The Letter asked Scheuer to "consider the following opportunities to satisfy this balance":

1.  Opportunity #1 – 50% Discount
    Pay this account with a lump sum payment of $117.99 which is a 50% discount off the amount due.  This arrangement will settle the account with Jefferson Capital.

2.  Opportunity #2 – 40% Discount
    Pay three payments of $47.17 and settle the account for $141.59.

3.  Opportunity #3 – Monthly Payments
    Jefferson Capital will also accept payments of $19.66 a month over the next twelve months.  These payments will apply toward the amount due of $235.98.

(*Id.*)

The Letter explained that Scheuer could exercise these options by (1) calling the toll-free phone number provided in the Letter, (2) sending a "MONEY GRAM" made "[p]ayable to: Jefferson Capital Systems, LLC," or (3) sending payment to a specific P.O. Box address in St. Louis, Missouri.  (*Id.*)

At the bottom of the Letter, in bold capital letters, Jefferson disclosed that "THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT." (*Id.*)   In additional bold capital letters, Jefferson advised Scheuer to "SEE REVERSE SIDE FOR IMPORTANT INFORMATION REGARDING YOUR RIGHTS UNDER FEDERAL, STATE, AND LOCAL LAWS." (*Id.*)

The reverse side of the Letter provided, in relevant part, that "JEFFERSON CAPITAL COMPLIES WITH A FEDERAL LAW CALLED THE [FDCPA] THAT PROVIDES CONSUMERS WITH CERTAIN RIGHTS.  THE [FDCPA] … REQUIRE[S] THAT … COLLECTORS MAY NOT USE FALSE OR MISLEADING STATEMENTS…." (*Id.* at 4, Pg. ID 176.)  The reverse side of the Letter also informed Scheuer that "[b]ecause of the age of your debt, we will not bring any kind of legal proceeding against you … to collect on the debt."  (*Id.*) The reverse side further assured Scheuer that if she made a partial payment toward

the debt, Jefferson would not deem that payment to re-start the already-expired

statute of limitations on an action to collect the debt. (*Id.*)[1]

_____

[1]  The reverse side of the Letter provided, in full:

> **Notice of Important Information:** Consumers have rights under federal, state, and local laws including, but not limited to those rights listed below:

> **Asking Us to Cease Communication:**  You have the right to ask us to stop communicating with you about this debt.  To do so, please write to us at 16 McLeland Road Dept. C, Saint Cloud, MN 56303. After you notify us, we will stop communication with you, except: (1) to advise you that we intend to pursue specific remedies permitted by law; or (2) to advise you that our efforts are being terminated.

> **Complaints:**  If you have a complaint about the way we are collecting this debt, please write to us at 16 McLeland Road Dept. C Saint Cloud, MN 56303 or call us toll-free at 1-888-718-0048 between 9 AM and 5 PM Central Time, Monday through Friday.

> JEFFERESON CAPITAL COMPLIES WITH A FEDERAL LAW CALLED THE FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA") THAT PROVIDES CONSUMER WITH CERTAIN RIGHTS.  THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT (ENFORCED BY THE FEDERAL TRADE COMMISSION) AND THE CALIFORNIA STATE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT REQUIRE THAT, EXCEPT UNDER UNUSUAL CIRCUMSTANCES, COLLECTORS MAY NOT CONTACT YOU BEFORE 8:00 A.M. OR AFTER 9:00 P.M. THEY MAY NOT HARASS YOU BY USING THREATS OF VIOLENCE OR ARREST OR BY USING OBSCENE LANGUAGE. COLLECTORS MAY NOT USE FALSE OR MISLEADING STATEMENTS OR CALL YOU AT WORK IF THEY KNOW OR HAVE REASON TO KNOW THAT YOU MAY NOT RECEIVE PERSONAL CALLS AT WORK.  FOR THE MOST PART, COLLECTORS MAY NOT TELL ANOTHER PERSON, OTHER THAN YOUR ATTORNEY OR SPOUSE ABOUT YOUR DEBT. COLLECTORS MAY CONTACT ANOTHER PERSON TO

Jefferson included with the Letter a remittance insert for Scheuer to return along with any payment she made by mail.  (*See id.* at 3, Pg. ID 175.)   The remittance insert was addressed to "Jefferson Capital Systems, LLC" at the St. Louis post office box identified in the text of the Letter.  (*See id.*)   The insert contained payment instructions.   It directed Scheuer to "include your JCS Reference Number … on the check or money order payable to: Jefferson Capital."  (*Id.* at 3, Pg. ID 175.)

---

CONFIRM YOUR LOCATION OR ENFORCE A JUDGMENT. FOR MORE INFORMATION ABOUT DEBT COLLECTION ACTIVITIES OR TO CONTACT THE FTC ABOUT THE WAY WE ARE COLLECTING THIS DEBT, PLEASE CONTACT THE FTC ONLINE AT www.ftc.gov OR WRITE THE FTC AT FEDERAL TRADE COMMISSION, CONSUMER RESPONSE CENTER, 600 PENNSYLVANIA AVE., N.W. WASHINGTON D.C. 20580.   YOU MAY ALSO CONTACT THE FEDERAL TRADE COMMISSION AT 1-877-FTC-HELP.

If the difference between your total balance and settled amount represents $600 or more in principal, such amount will be reported on Form 1099-C in January of next year; and a copy of the form will be provided to you and the IRS.  You are responsible for any tax liability associated with this transaction. If you have questions about the tax implications, please contact your tax advisor.

Time-Barred Debt: This information is not legal advice.  Because of the age of your debt, we will not bring any kind of legal proceeding against you, such as a lawsuit or arbitration, to collect on the debt; further, if you make a payment on this debt it will not be deemed by us to revive, toll, or restart the statute of limitations on this debt.  If we transfer this debt to a new owner or assign any rights related to this debt, the new owner, successor or assign will be required in writing to do the same.

(*Id.*) (emphasis in original).

## <u>SCHEUER'S CLAIMS AND THE PROCEDURAL HISTORY OF THIS ACTION</u>

Scheuer filed her Amended Complaint in this action on March 24, 2014. (*See* Amended Complaint, ECF #13.)  She alleges – on behalf of a purported class of consumers who received communications like the Letter from Jefferson – that the Letter contained certain false, misleading, and deceptive statements.  The short "Factual Allegations" section of Scheuer's Amended Complaint, in its entirety, provides as follows:

26.

On or about March 7, 2014, 2014, Defendant JCS sent a letter to Plaintiff specifically and Michigan Consumers **Please see Exhibit 1**. The letter provided Ms. [Scheuer] notice of her dispute and validation rights under the FDCPA with a notice that stated:

> **"THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."**

27.

This is the only letter that Ms. Scheuer has received from JCS. **<u>Please see Exhibit 2, Affidavit of Ms. Scheuer</u>**.

28.

JCS is writing to "Dear Donna [Scheuer]" and states in the first line of its letter that:

"The above referenced account is with our office for collection and *servicing*."

6

29.

The "Jefferson" letter indentifies [sic] **JEFFERSON CAPITAL SYSTEMS LLC** as "Your Current Creditor."

30.

The letter did not provide Ms. [Scheuer] notice of her dispute and validation rights under the FDCPA but stated:

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

31.

As part of its business purchasing debt portfolios, the subject debt has been purchased by JCS as a junk, charged off debt in default and JCS is therefore a debt collector at the time it purchased the debt and now.

32.

Defendant JCS is communicating to the Plaintiff specifically and the Michigan Consumer Class generally that it is both the debt collector and the creditor. However, a debt collector cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive." *Bridge v. Ocwen Federal Bank, FSB*, 681 F. 3d 355 - Court of Appeals, 6th Circuit 2012. ("Congress has unambiguously directed our focus to the time the debt was acquired in determining whether one is acting as a creditor or debt collector under the FDCPA."); *Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 535, 536 (7th Cir. 2003) (noting that "the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, *and as creditors if it was not*").

33.

It is a violation of the FDCPA and MCPA for Defendant to represent itself to Plaintiff and the Class as both the collector and the creditor when it obtains a debt that was acquired in default.

(*Id.* at ¶¶26-33) (emphasis in original).

The Amended Complaint contains two claims for relief – one under the FDCPA and one under the MCPA.  Scheuer's claims, in their entirety,[2] are as follows:

### Count 1 – Fair Debt Collection Practices Act

Defendants have [sic] violated the FDCPA.  Defendants' [sic] violations of the FDCPA include, but are not necessarily limited to, the following:

    a.    Defendant violated 15 U.S.C. [§] 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt using [the Letter] …; and

    b.    Defendant collected on the debt and violated 15 U.S.C. [§] 1692e(10) while claiming to be both the debt collector and the creditor at the same time in connection with the collection of a debt that was in default at the time Jefferson purchased the debt…; and

    c.    Defendant collected on the debt and violated 15 U.S.C. [§] 1692g(a)(2) by falsely claiming to be [the] creditor who services the debt in [the Letter]; and

---

[2] As part of these claims, Scheuer incorporates the other allegations in her Amended Complaint.  The sole factual allegations in the Amended Complaint are set forth above in text.

8

d.   Defendant violated 15 U.S.C. [§] 1692e(2)(A) with the falsification of the character, amount, or legal status of the alleged [debt] [in the Letter].

[…]

### Count 2 – Michigan Collection Practices Act

Defendants have [sic] violated the MCPA.  Defendant's violations of the MCPA include, but are not necessarily limited to, the following:

a.   Defendant violated MCLA [§] 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt, using [the Letter] as mentioned above;

b.   Defendant violated MCLA [§] 445.252(e) [by m]aking an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt [in the Letter];

c.   Defendant has violated MCLA [§] 445.252(f) [by m]isrepresenting in a communication with a debtor [one] or more of the following:

i.   The legal status of a legal action being taken or threatened.

ii.   The legal rights of the creditor or debtor [in the Letter].

d.   Defendant has violated MCLA [§] 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee such as continuing to contact a represented debtor.

(*Id.* at ¶¶47-49) (paragraph numbers omitted).

In lieu of filing an Answer, on May 22, 2014, Jefferson filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (*See* Jefferson's Motion, ECF #18.)   Jefferson argued that it could not be liable as

alleged by Scheuer because it was, in fact, both a "creditor" and a "debt collector," as it indicated in the Letter, and because it was legally required to identify itself as such in the Letter. (*See* Jefferson's Brief, ECF #19 at 1-2, Pg. ID 219-20.)

In response, Scheuer argued at great length that, as a matter of law, Jefferson could not have been both a "creditor" and a "debt collector;" that Jefferson's statements to that effect in the Letter were thus false; and that Jefferson's false statements gave rise to liability under the FDCPA and MCPA. (*See* Scheuer Response, ECF #22-1 at 5-16, Pg. ID 244-55.)  Scheuer submitted her own affidavit in support of her response. (*See* Scheuer Aff., ECF #22-2 at 20, Pg. ID 279.)  In her affidavit, Scheuer does not deny owing the debt identified in the Letter. (*See id.*)  Instead, she notes that the Letter "states that Jefferson is my current creditor and also a debt collector," and she says that she is "confused as to what that means to me or what I am supposed to do with that." (*Id.* at ¶4.)  Scheuer does not explain *how* Jefferson's statement confused her. (*See id.*)

The Court held a hearing on Jefferson's motion on July 23, 2014.  During the hearing, the Court identified, and focused closely upon, an issue that the parties had not substantially addressed in their papers: namely, whether the statements by Jefferson, even if false, were sufficiently material to give rise to liability under the FDCPA.  At the conclusion of the hearing, the Court determined that it would be

appropriate to permit the parties to file supplemental briefs on the materiality issue, and both parties have now filed such briefs. (*See* ECF #26-27.)

## **GOVERNING LEGAL STANDARD**

Rule 12(b)(6) provides for dismissal of a complaint when a plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct.  *Id.* (citing *Twombly*, 550 U.S. at 556).  When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true.  *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001).  "Mere conclusions," however, "are not entitled to the assumption of truth.  While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss.  *Twombly*, 550 U.S. at 556.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

11

## ANALYSIS

### A. Sections 1692e and 1692g(a) of the FDCPA and the Least Sophisticated Debtor Standard

Congress enacted the FDCPA "to address the widespread and serious national problem of debt collection abuse by unscrupulous debt collectors." *Currier v. First Resolution Inv. Corp.*, --- F.3d ---, 2014 WL 3882745 at *2 (6th Cir. Aug. 8, 2014) (citing S. Rep. No. 95-382, at 2 (1977)). Congress intended "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

Scheuer brings claims under two sections of the FDCPA: 1692e and 1692g(a). Section 1692e prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e expressly prohibits a debt collector from, among other things, falsely representing "the character, amount, or legal status of any debt" and from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e(2)(A), 1692e(10).

Section 1692g(a) "requires [a] debt collector[] to issue a 'validation notice,' either in the initial communication with a consumer or within five days of that

12

initial communication, that informs the consumer of certain rights including the right to make a written request for verification of the debt and to dispute the validity of the debt." *Fed. Home Loan Mtg. Corp. v. Lamar*, 503 F.3d 504, 508 (6th Cir. 2007) (quoting *Jacobson v. Healthcare Fin. Svcs., Inc.*, 434 F.Supp.2d 133, 139 (E.D. N.Y. 2006), *vacated on other grounds*, 516 F.3d 85 (2d Cir. 2008)). Congress enacted section 1692g(a) "to ensure that debt collectors gave consumers adequate information concerning their legal rights." *Id.* at 509 (quoting *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)). Section 1692g(a) establishes certain information that a debt collector must include in a validation notice, including, as relevant here, "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2).[3]

In order to prevail on her claims under sections 1692e and 1692g(a), Scheuer must show that Jefferson's allegedly-false statements would have deceived or

---

[3] Scheuer alleges that the Letter was the first and only communication she ever received from Jefferson. (*See* Am. Compl. at ¶27; Scheuer Aff. at ¶2.) However, Jefferson maintains that it sent Scheuer a prior communication "contain[ing] all of the notifications required by [s]ection 1692g(a) in 2010." (Jefferson's Br. at 3, Pg. ID 221.) If Jefferson is correct, then section 1692g(a) would not appear to apply to the Letter. For the purposes of this Motion, and taking Scheuer's allegations as true, the Court will assume without deciding that the Letter was a "validation notice" to which the requirements of section 1692g(a) applied. Had Scheuer's 1692g(a) claim survived Jefferson's Motion (it does not, for the reasons discussed below), the Court would have afforded Jefferson an opportunity to establish that section 1692g(a) did not apply to the Letter.

misled the "least sophisticated debtor."[4] *See Currier*, --- F.3d ---, 2014 WL 3882745 at *2. Under this objective test, an FDCPA plaintiff must demonstrate that "there is a reasonable likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011) (citing *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592 (6th Cir. 2009)). The Sixth Circuit has applied the "least sophisticated debtor" test to claims under both section 1692e and 1692g(a). *See, e.g., Barany-Snyder v. Weiner*, 539 F.3d 327, 334-35 (applying "least sophisticated debtor" standard to § 1692e claim); *Lamar*, 503 F.3d at 509 (applying "least sophisticated debtor" standard to § 1692g(a) claim); *Savage v. Hatcher*, 109 Fed. App'x 759, 762 (6th Cir. 2004) (same).

## B. The "Least Sophisticated Debtor" Standard That Scheuer Must Satisfy Protects <u>Both</u> Vulnerable Consumers <u>and</u> Debt Collectors

The least sophisticated debtor standard is "designed to ensure that the FDCPA protects *all* consumers" – particularly those who may be "gullible" or "naïve." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008) (quoting *Lamar*, 503 F.3d at 509) (emphasis added); *see also*

---

[4]   Courts use the phrases "least sophisticated debtor" and "least sophisticated consumer" interchangeably. *See*, *e.g., Brown v. Card Svc. Center*, 464 F.3d 450, 454 n. 1 (3d Cir. 2006).

*Gonzales v. Arrow Fin. Svcs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011) (least sophisticated debtor standard "is designed to protect consumers of below average sophistication or intelligence, or those who are uninformed or naïve") (internal quotation marks omitted).  The standard recognizes that the FDCPA is designed "for the protection of … the public – that vast multitude which includes the ignorant, the unthinking, and the credulous."  *Crawford v. LVNV Funding, LLC*, --- F.3d ---, 2014 WL 3361226 at *2 (11th Cir. July 10, 2014) (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172-73 (11th Cir. 1985)).

The least sophisticated debtor standard "also protects law-abiding debt collectors" in several important ways.  *See Sanford v. Portfolio Recovery Assoc., LLC*, No. 12-cv-11526, 2013 WL 3798285 at *7 (E.D. Mich. July 22, 2013) (citing *Lamar*, 503 F.3d at 510); *see also* 15 U.S.C. § 1692(e) (FDCPA intended to, among other things, protect debt collectors who "refrain from using abusive debt collection practices").  For instance, the standard protects debt collectors from "liability for … idiosyncratic interpretations of collection notices."  *Lamar*, 503 F.3d at 510 (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000)) (internal punctuation omitted).

Moreover, and of particular importance here, the standard protects debt collectors from liability where their statements could mislead *only* the most sophisticated reader and would not deceive a reader of ordinary or lesser

15

sophistication.  In the words of the Sixth Circuit, the standard precludes FDCPA liability for a communication that could deceive only "a lawyer clos[ely] parsing [it] like a municipal bond offering." *Miller*, 561 F.3d at 595 (quoting *Jacobson*, 434 F.Supp.2d at 138) (internal quotation marks omitted).  Thus, when applying the least sophisticated debtor standard, a court does not read the subject collection notice "with the astuteness of a 'Philadelphia lawyer,'" but instead the court "give[s] it a common sense appraisal."  *Id.* (quoting *Jacobson*, 434 F.Supp.2d at 138).

## C. Jefferson's Statements in the Letter Would Not Mislead the "Least Sophisticated Debtor"

Scheuer's FDCPA claims fail because Jefferson's allegedly false statements would not deceive the least sophisticated debtor.  Indeed, the potential falsity of Jefferson's statements would be apparent – if at all – only to a sophisticated attorney well-versed in the nuances of consumer protection law.

As noted above, Scheuer's FDCPA claims rest primarily on Jefferson's self-identification in the Letter as Scheuer's "[c]urrent [c]reditor."  (*See* Am. Compl. at ¶¶29, 33.)  According to Scheuer, Jefferson's self-labeling as a "current creditor" is materially false – and thus actionable under the FDCPA – because Jefferson is a "debt collector" (a point Jefferson does not dispute), and courts have held that under the FDCPA a party cannot be *both* a "debt collector" *and* a "creditor" with respect to the same debt. (*See* Scheuer's Resp. at 6-10, Pg. ID 245-49.)  But it is

hardly self-evident that Jefferson could not be Scheuer's "current creditor" at the same time that it functioned as a "debt collector."  Indeed, Scheuer's argument that Jefferson could not have been a creditor when acting as a debt collector stems *not* from the ordinary understanding of the terms "debt collector" and "creditor," but instead from a series of federal appellate court decisions construing complex definitional provisions and exclusions within the FDCPA. (*See id.* at 13-16, Pg. ID 242-55) (citing *Bridge, supra*; *FTC v. Check Investors*, 502 F.3d 159 (3d Cir. 2003); *Schlosser, supra*).  Those courts explain that "[t]he distinction between a creditor and a debt collector" – and thus the reason that a party cannot be both a "debt collector" and a "creditor" under the FDCPA – "lies precisely in the language of § 1692a(6)(F)(iii)."[5] *Bridge*, 681 F.3d at 359.  The "least sophisticated

---

[5]  Section 1692a(6) provides in relevant part:

> (6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another …. The term does not include-

> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … (iii) concerns a debt which was not in default at the time it was obtained by such person….

In *Bridge*, the Sixth Circuit explained that pursuant to the exclusion from the definition of "debt collector" in section 1692a(6)(F)(iii), an entity that attempts to

debtor" would not share the appellate courts' nuanced understanding of section 1692a(6)(F)(iii) and would thus have no reason to question Jefferson's statement that it was a "current creditor."

More importantly, the "least sophisticated debtor" would *not* have been misled by Jefferson's self-identification as Scheuer's "current creditor" because Jefferson's use of that phrase was *consistent* with its *ordinary* meaning. The term "creditor" is commonly understood to mean "one to whom a debt is owed." *See Stubbs v. Bank of America*, 844 F.Supp.2d 1267, 1270 (N.D. Ga. 2012) (quoting Merriam-Webster's Dictionary). Here, Scheuer's own allegations make clear that Jefferson owns the debt described in the Letter. (*See* Am. Compl. at ¶31.) Accordingly, the debt *is* now "owed to" Jefferson, and, thus, under an *ordinary* understanding of the term "creditor," Jefferson *is* Scheuer's "current creditor" – just as it claimed to be in the Letter. Indeed, even one of the federal court decisions cited by Scheuer – for the proposition that a party may not be a "debt collector" and a "creditor" under the FDCPA's technical definitions of those terms

---

collect on a debt is *either* a debt collector *or* a creditor, "depending on the default status of the debt at the time it was acquired." *See* 681 F.3d at 359 (citing *Check Investors*, 502 F.3d at 171-73; *Schlosser*, 323 F.3d at 536). The Sixth Circuit drew on the reasoning of *Check Investors*, in which the Third Circuit carefully parsed the language of section 1692a(6)(F)(iii) and found that "one attempting to collect a debt is a 'debt collector' under the FDCPA if the debt in question was in default when acquired," and it is "a creditor if the debt it is attempting to collect was not in default when it was acquired." *Check Investors*, 502 F.3d at 173.

– recognizes that party in Jefferson's precise position *is* "nominally a creditor." *Check Investors*, 502 F.3d at 173.[6]   Simply put, Jefferson did not deceive nor mislead the "least sophisticated debtor" by identifying itself as Scheuer's "current creditor."

Notably, in *Miller, supra*, the Sixth Circuit squarely rebuffed a claim – much like Scheuer's here – that a communication would have deceived the "least sophisticated debtor" where the alleged falsity of the communication would have been apparent *only* to a sophisticated attorney.   *Miller* arose out of a debt collector's attempt to collect on a debt by filing a complaint in state court alleging, among other things, that it had "acquired, for valuable consideration, all right, title and interest in" the debt.   561 F.3d at 595.   Miller claimed that this statement violated the FDCPA because it "would dupe the least-sophisticated consumer into thinking that [the debt collector] enjoyed holder-in-due-course protection."   *Id.* The Sixth Circuit squarely rejected this claim because the least sophisticated consumer would not know anything about holder-in-due-course protection, and therefore, as a matter of law, the debt collector's statement could not mislead the least sophisticated consumer in the way Miller claimed.   *Id.* at 596.   ("[N]o reason exists to think that the least-sophisticated consumer gives any thought to holders in

---

[6]   S*ee also Schlosser*, 323 F.3d at 536 (a party that collects debts acquired from another "could logically fall into" either category – debt collector or creditor).

due course – by definition, the least-sophisticated consumer lacks any knowledge of the *concept*") (emphasis in original).  Just as the least sophisticated consumer lacks knowledge of holder-in-due course concept at issue in *Miller*, so too is she unaware of the nuanced distinctions between a "creditor" and a "debt collector" under § 1692a(6)(F)(iii) of the FDCPA.  Accordingly, under the Sixth Circuit's reasoning in *Miller*, the least sophisticated consumer would not be deceived by Jefferson's self-identification as Scheuer's "current creditor," and Scheuer's claim based upon that self-identification fails as a matter of law.

Scheuer also argues that the text of the Letter would have misled the least sophisticated debtor concerning whom to pay in order to satisfy the debt.  (*See* Transcript, ECF #28 at 13, 21.)  But the Letter, "read in its entirety, carefully and with some elementary level of understanding," *Lamar*, 503 F.3d at 510, would leave no doubt in the mind of the least sophisticated debtor that she must pay Jefferson in order to satisfy the debt.  Indeed, the Letter states that Scheuer's debt is owed *to Jefferson* and directs Scheuer *to pay Jefferson*:

- The Letter states that making a payment equal to 50% of the amount due "will settle the account *with Jefferson Capital*."

- The Letter indicates that "*Jefferson Capital will also accept* payments of $19.66 a month over the next twelve months."

- The Letter indicates that Scheuer may send a "MONEY GRAM" made "*[p]ayable to: Jefferson Capital Systems, LLC*."

20

- The remittance insert included with the Letter states that Scheuer may send a check or money order made "*payable to: Jefferson Capital*."

- The remittance insert is pre-addressed to "*Jefferson Capital Systems, LLC*" at the St. Louis P.O. Box address identified in the Letter.

(Letter at 2-3, Pg. ID 16-17) (emphasis added).  Moreover, Scheuer has identified no party other than Jefferson to whom an unsophisticated debtor might reasonably think her debt was owed.[7]  In this context, Jefferson's self-identification as "current creditor" simply was not misleading.

Finally, Scheuer argues that an unsophisticated consumer would have been misled by Jefferson's statement that it was "servicing" Scheuer's debt at the same time it was her "current creditor."  But Scheuer has made no persuasive showing as to why a "creditor," as Jefferson claimed to be, could not "service" the debts it owns – or, more importantly, why a consumer would be confused by a creditor's statement that it was "servicing" its own debt.

---

[7]   Scheuer asserts that the least sophisticated debtor might be confused by the statement "Debt Description: FINGERHUT DIRECT MRKTING."  (*See* Tr. at 13.)  However, *nothing* in the Letter indicated that Scheuer owed any money to "FINGERHUT DIRECT MRKTING" – the Letter did not identify "FINGERHUT DIRECT MRKTING" as a creditor; it did not state that "FINGERHUT DIRECT MRKTING" owned Scheuer's debt; and it did not instruct Scheuer to send money to "FINGERHUT DIRECT MRKTING."  In contrast, and as listed above, the Letter said at least five different ways that Scheuer owed money *to Jefferson*.

**D.  The Statements Identified by Scheuer Are Not Material**

Even if Jefferson's statements were in some way false or misleading, Scheuer still cannot prevail on her FDCPA claims because she has not shown that the alleged misstatements were material.  "[M]ateriality is an ordinary element of any federal claim based on a false or misleading statement," *Miller*, 561 F.3d at 596-97 (quoting *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009), and the Sixth Circuit has repeatedly held that, in order to violate the FDCPA, "a statement must be *materially* false or misleading."  *Wallace v. Washington Mutual Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) (emphasis in original) (citing *Miller*, 561 F.3d at 596-97).   A misstatement is material under the FDCPA if it "frustrate[s] a consumer's ability to intelligently choose his or her response." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010).

Despite numerous opportunities, Scheuer has failed to explain how Jefferson's alleged misstatements would impair an unsophisticated debtor's ability to respond to the Letter.  When asked at oral argument to describe how the Letter might materially mislead, Scheuer merely restated the legal premises that are the basis of her Amended Complaint, and she failed to offer a single example of how Jefferson's statements could actually impair an unsophisticated debtor's ability to respond to the Letter:

> Q: I want to be as specific as possible.  Point me to the exact words in the letter…. Which words are the materially misleading words?

A: I believe the first line that we pointed to, your Honor – the above account is with our office for collection and servicing.

Q: What is misleading about that?

A: That it's not there for servicing.  Actually those two are mutually exclusive.  They can't be both.  If you're servicing, you are the creditor.  You are the collector if you are the debt collector or collection.

Q: Let me stop you there…. [W]hen [Scheuer] looks at that … how does that mislead her?

A: Well, which is it?

[…]

Q: Pretend … [t]he letter arrives at the home of the least sophisticated consumer, this exact letter.  … How is that consumer misled by the contents of this letter?

A: … [I]t doesn't necessarily have to be misled.  It also can cause confusion by deceptive behavior.  So it is confusing to the least sophisticated consumer to say you are one thing when you are really the other, or to say you are both….

[…]

Q: … I understand material to mean one that impacts her decision making responding to the letter.  And that is kind of where I am stuck.  How this – how this causes her a problem in figuring out her next step.

A: I don't know how that would – the way that you framed it….

[…]

Q: All right.  I asked this question several times.  I just want to try one more time.  The letter arrives at the door step of the least sophisticated consumer.  And for purposes of my question, I want you to assume that it's false in all the ways you identified.  How does it mislead that consumer to take one course of action or another?

23

A: She is being collected on a debt she doesn't owe the person that is contacting her.  There is nothing more material than that.  She is now under jeopardy.  She is facing a debt collector saying not only are they collecting but they are also servicing….

(Tr. at 17-19, 22, 25, 29-30.)[8]

Scheuer missed the point when, in response to the Court's questions about materiality, she repeated her legal argument that Jefferson's self-identification as a "debt collector" and "creditor" (or servicer) was inconsistent with the FDCPA.  Even if Jefferson's use of those terms did not square with their definitions under the FDCPA, Scheuer must demonstrate that the inaccuracy somehow impaired the ability of an unsophisticated consumer to respond to the Letter.  Scheuer has never been able to do that.

Scheuer's failure to show how an unsophisticated consumer's ability to respond would have been impaired easily distinguishes this case from those in which courts have found a misstatement to be material.  For instance, in *Wallace*, 683 F.3d at 323, the Sixth Circuit considered whether an attorney representing Washington Mutual Bank ("WaMu") made a material misrepresentation when the

---

[8]   In the last answer quoted above in text, counsel for Scheuer said that Jefferson materially misled Scheuer by "collecting on a debt she doesn't owe" to Jefferson.  But Scheuer's Amended Complaint acknowledges that Jefferson purchased her debt and, thus, that the debt is owed to Jefferson. (*See* Am. Compl. at ¶31.)  Likewise, Scheuer's affidavit does not deny that she owes the debt and/or that Jefferson owns the debt. (*See* Scheuer Aff.)  There is simply no claim in this action that Scheuer does not owe the debt and/or does not owe it to Jefferson.

attorney filed a foreclosure action against mortgagor Betty Wallace ("Wallace") claiming that WaMu was Wallace's creditor.  *Id.*  WaMu did not own Wallace's mortgage at the time that it filed the foreclosure action, although it expected to soon receive an assignment of the mortgage from Wells Fargo.  *Id.* at 325.  The Sixth Circuit offered the following explanation as to why the attorney's false statement was material:

> [Wallace] alleges that identifying Washington Mutual as the holder of the note caused her confusion and delay in trying to contact the proper party concerning payment on her loan and resolution of the problem. She alleges that she called Washington Mutual, the purported owner of the mortgage, to try to obtain information about her home loan and was told she had to have a ten-digit account number for her loan, not the account number she had from Wells Fargo.  [Wallace] also alleges that her daughter ultimately contacted an attorney, as well as the Ohio Attorney General's Office, in an attempt to stop the sale of [Wallace]'s home and get the loan reinstated.  Given these allegations, [Wallace] has sufficiently alleged a material misrepresentation that would confuse or mislead an unsophisticated consumer.

*Id.* at 327-28 (internal citation omitted).

In sharp contrast to Wallace, Scheuer has not identified *any* specific ways in which she was misled.   Instead, she offers only a conclusory statement that Jefferson's self-identification as "current creditor" and "debt collector" confused her. (*See* Scheuer Aff. at ¶4.)  And unlike Wallace, Scheuer has not identified any party other than Jefferson to whom an unsophisticated debtor might reasonably

think her debt was owed,[9] nor has Scheuer alleged that she took any concrete steps based upon her alleged confusion.  That Scheuer's allegations of materiality pale in comparison to those in *Wallace* underscores that she has failed to state a viable claim. *See, e.g., Clark v. Lender Processing Svcs.*, 562 Fed. App'x 460, 467 (6th Cir. 2014) (affirming district court's dismissal of FDCPA claim on lack-of-materiality grounds because, among other things, the complaint did not contain allegations of confusion similar to those in *Wallace*); *Galati v. Manley Deas Kochalaski LLC*, No. 13-cv-2206, 2014 WL 584784 at *4 (N.D. Ohio Feb. 12, 2014) (rejecting plaintiff's reliance on *Wallace* to establish materiality where plaintiff "has not identified any [other] party to whom [she] might owe [her] debt" and has not "alleged that [she was] confused about who owned [her] debt").

Scheuer argues that Jefferson's statements should be deemed material under *Tourgeman v. Collins Fncl. Svcs., Inc.*, 755 F.3d 1109 (9th Cir. 2014), but that case, too, is readily distinguishable.  In *Tourgeman*, a debt collector mailed three collection notices to David Tourgeman ("Tourgeman") that (1) incorrectly identified Tourgeman's original creditor as "American Investment Bank," when in fact CIT Online Bank originated his loan, and (2) identified the loan by an

---

[9]  As discussed above, the Court does not credit Scheuer's contention that the least sophisticated consumer would believe that the debt was owed to "FINGERHUT DIRECT MRKTING."

incorrect account number.  Tourgeman argued that these statements were material because they:

> could lead a consumer to reach any number of incorrect understandings about the nature of the predicament he or she faces. For example, the consumer might be concerned that the erroneous information is indicative of an attempted fraud.  Or the consumer might assume that because the letter seeks to collect a debt that evidently does not belong to him, the letter can safely be disregarded. Alternatively, the consumer might be concerned that if he responds to the letter by paying the amount demanded, he will later receive another letter from a different debt collector attempting to collect the same debt.

*Id.* at 1120.  The court agreed that the debt collector's false statements "could easily cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort."  *Id.* at 1121 (citing *Donohue*, 592 F.3d at 1034).  As noted above, unlike Tourgeman, Scheuer has failed to identify a single way in which Jefferson's allegedly-false statements would actually affect the course of action chosen by the least sophisticated debtor, and thus *Tourgeman* does not support Scheuer's argument that Jefferson's statements were material.

## E. The Issues of Deceptiveness and Materiality are Not Questions of Fact for a Jury in this Case

Scheuer urges this Court to deny Jefferson's Motion to Dismiss because "[t]he question[s] as to [deceptiveness and] materiality … [are] factual question[s]" that must be submitted to a jury.  (*See* Scheuer Supp. Br. at 11, Pg. ID 348.)  While

some authority suggests that these questions are *often* ones for the jury, *see, e.g., McMillan v. Collection Profs. Inc.*, 455 F.3d 754, 759 (7th Cir. 2006), that is *not always* the case.   Indeed, Scheuer is simply wrong when she claims that these questions *must* be decided by the jury in *every* FDCPA case.   The Sixth Circuit and other courts of appeals have repeatedly ruled on these issues as a matter of law where, as here, the allegations and/or evidence were plainly insufficient to establish deception or materiality. *See, e.g., Clark*, 562 Fed. App'x at 466-67 (affirming dismissal on materiality grounds); *Miller,* 561 F.3d at 594-97 (affirming summary judgment where plaintiff unable to establish deception or materiality); *Gabriele v. Am. Home Mtg. Svcg., Inc.*, 503 Fed. App'x 89, 95-96 (2d Cir. 2012) (affirming dismissal on materiality grounds); *Hahn*, 557 F.3d at 757-58 (affirming summary judgment where plaintiff unable to establish deception or materiality); *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009) (affirming summary judgment where plaintiff unable to establish deception); *Donohue*, 592 F.3d at 1034 (affirming summary judgment on materiality grounds).   Because Scheuer's allegations of deception and materiality are deficient as a matter of law, her FDCPA claims are properly dismissed pursuant to Jefferson's motion under Rule 12(b)(6).

**F. Scheuer's MCPA Claims Also Fail To State a Claim on Which Relief Can Be Granted**

Nearly all of Scheuer's claims under the MCPA mirror her claims under the FDCPA.  "MCPA claims which 'simply duplicate … claims under the FDCPA' need not be addressed separately."  *Newman v. Trott & Trott, P.C.*, 889 F.Supp.2d 948, 967 (E.D. Mich. 2012) (quoting *Lovelace v. Stephens & Michaels Assoc., Inc.*, No. 07-cv-10956, 2007 WL 3333019 at *2 (E.D. Mich. Nov. 9, 2007)); *see also Saltzman v. I.C. System, Inc.*, No. 09-cv-10096, 2009 WL 3190359 at *9 (E.D. Mich. Sept. 30, 2009); *Millsap v. CCB Credit Svcs., Inc.*, No. 07-11915, 2008 WL 8511691 at *10 (E.D.Mich. Sept. 30, 2008).  Accordingly, Scheuer's claims under MCPA §§ 445.252(e), (f), and (n) fail for the reasons discussed above.

Scheuer brings only one claim under the MCPA that is not duplicative of her FDCPA claims, but that claim also fails.  Scheuer asserts that Jefferson "fail[ed] to implement a procedure designed to prevent a violation by an employee."  M.C.L. § 445.252(q).  "[H]owever, [Scheuer] has advanced only a general contention, and has not endeavored to identify any specific defect in [Jefferson's] procedures that might have caused or contributed to the alleged violation…."  *Millsap*, 2008 WL 8511691 at *11.  Jefferson's wholly-conclusory allegation is insufficient to state a claim based upon defective procedures.  Accordingly, the Court dismisses Scheuer's claim under M.C.L § 445.252(q).

29

## CONCLUSION

For all of the reasons explained above, **IT IS HEREBY ORDERED** that Jefferson's Motion to Dismiss (ECF #18) is **GRANTED**, and Scheuer's Amended Complaint (ECF #13) is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED THAT** Scheuer's Motion for Class Certification (ECF #14) is **DENIED AS MOOT**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 9, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 9, 2014, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113

30